UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANDRE ANDERSON,

                Plaintiff,                Case No.: 21/

              -against-                **COMPLAINT**

SARENA TOWNSEND, Individually,
RUBEN BENITEZ, Individually, DEION ISLAR,    **Jury Demand**
Individually, CHRISTOPHER DIXON, Individually,
and NEW YORK CITY, New York,

                Defendants.
------------------------------------------------------------------x

        Plaintiff, ANDRE ANDERSON, by his attorneys The Bellantoni Law Firm, PLLC, complains against the defendants as follows:

## NATURE OF THE ACTION

        1.     This is an action for compensatory, economic, and punitive damages as well as injunctive relief, attorney's fees and costs proximately resulting from the actions of the defendants' violations of the plaintiff's Constitutional Rights under the Second, Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.

## JURISDICTION

        2.     The Court's jurisdiction over the plaintiff's federal claims is invoked pursuant to 28 U.S.C. § 1331, § 1343.

## THE PARTIES

        3.     Plaintiff, ANDRE ANDERSON, (hereinafter "Plaintiff") is a citizen of the United States and a domiciliary of Nassau County, New York.

1

4.     Plaintiff is employed by New York City as a Correction Officer with the New York City Department of Correction. Plaintiff had no disqualifiers to the possession of firearms, nor does he have any disqualifiers to date.

5.     Defendant NEW YORK CITY, is a municipal subdivision of the State of New York.

6.     Defendant SARENA TOWNSEND ("Townsend"), sued herein in her individual capacity, is the Deputy Commissioner of Investigation and Trials for the New York City Department of Correction.

7.     In her capacity as the Deputy Commissioner of Investigations and Trials, defendant Townsend is the *de facto* final decision maker with regard to the seizure of handguns, rifles and shotguns personally owned by law enforcement officers of the New York City Department of Correction.

8.     In her capacity as the Deputy Commissioner of Investigations and Trials, defendant Townsend is the *de facto* final decision maker with regard to the release and return of handguns, rifles and shotguns personally owned by law enforcement officers of the New York City Department of Correction.

9.     Respondent RUBEN BENITEZ ("Benitez"), sued herein in his individual capacity, is the Assistant Commissioner of Investigation and Trials for the New York City Department of Correction. Benitez, at all times, acted in concert with Townsend.

10.    Defendant DEION ISLAR ("Islar") sued herein in his individual capacity, is an investigator with the New York City Department of Correction.

11.    Defendant CHRISTOPHER DIXON ("Dixon") sued herein in his individual capacity, is an investigator with the New York City Department of Correction.

## MATERIAL FACTS

12. By this action, Plaintiff seeks redress from this Court in connection with Defendants' unlawful seizure of his personal handgun and rifle on July 25, 2020 and Defendants' persistent and unlawful refusal to return his personal property.

13. Plaintiff has been employed by New York City as a Correction Officer with the New York City Department of Corrections ("NYCD") since December 2016.

14. In his employment with NYCD, Plaintiff has been assigned to the Emergency Service Unit ("ESU") division since 2018.

15. The NYCD ESU is a chosen, prestigious assignment within the NYCD.

16. ESU members, like Plaintiff, respond to all emergencies within the department, both on and off Rikers Island, including fire emergencies, high security inmate transport, riot control, inmate escapes, tactical security operations, cell extractions, perimeter security/ response, confined space rescue, vehicle emergencies and motor vehicle accidents.

17. ESU teams respond to all emergency drills (i.e. Fire Evacuation, Yard Drills), provide EMT response, and assists the Port Authority with air disasters and/or emergency-related events.

18. ESU also assists the Special Operations Division of the NYCD with security breaches and enhanced security for Rikers Island during emergencies.

19. ESU officers are at-the-ready to participate in all scheduled and unscheduled searches and respond to all jail-based incidents.

20. ESU officers are responsible for the distribution, repair and maintenance of the departmental chemical agents supply, and provide chemical agent training for new recruits, in-service training, and facility training on cell extractions, defensive tactics, handcuffing, and

escort procedures.

21. Plaintiff has, at all times, performed his duties as a member of the ESU in an exemplary manner.

### *Membership in the New York Joint Task Force Empire Shield*

22. In addition to his employment with NYCD, Plaintiff is a member of the Joint Task Force Empire Shield from 2015-2016.

23. The Joint Task Force Empire Shield is an element of the New York State Division of Military and Naval Affairs engaged and responsible for the military defense of New York City, with an emphasis on the deterrence and prevention of internal security threats.

### *Active Military Duty as a Military Police Officer and LEOSA Firearm Credentials*

24. Plaintiff is an Active Military Police/Law Enforcement Officer with the New York Army National Guard.

25. Plaintiff has been a member of the National Guard since 2014.

26. Plaintiff has been a Military Police Officer ("MP") since 2019.

27. As an MP, Plaintiff is credentialed under the Law Enforcement Officers Safety Act.

28. The Law Enforcement Officers Safety Act (LEOSA) is a United States federal law, enacted in 2004, that allows two classes of persons - the "qualified Law Enforcement Officer" and the "qualified retired Law Enforcement Officer" - to carry a concealed firearm in any jurisdiction in the United States or United States Territories, regardless of state or local laws, with certain exceptions.

29. Plaintiff is a "qualified Law Enforcement Officer" under LEOSA.

30. Since January 5, 2021, Petitioner has been on Active-Duty status.

*Events of July 25, 2020*

31. On July 25, 2020, while Plaintiff was off-duty and driving home, another vehicle rear-ended his vehicle.

32. Plaintiff exited his vehicle to assess the damage and identified that a Honda Pilot ("Honda") had rear-ended him.

33. Plaintiff observed two occupants inside the Honda and approached the vehicle to exchange their driver's license, insurance, and registration. In response, the driver stated, "I got $3,000, I'll pay for that. When we get off the bridge, I will give you the information."

34. When Plaintiff refused this proposal and requested that the driver exit his vehicle to exchange the necessary information, the driver placed the Honda in reverse and fled the scene.

35. Plaintiff returned to his vehicle and immediately contacted 911 and identified himself as an off-duty Officer who was involved in a hit-and-run accident. Plaintiff advised the dispatcher that he was following the Honda, provided a description of the vehicle, and requested assistance. As Plaintiff continued to follow the Honda, he observed the Honda strike a second vehicle causing both vehicles to collide into the barrier of the Cross Island Parkway.

36. As a trained and registered Emergency Medical Technician, Plaintiff provided the dispatcher with an update regarding the subsequent accident and his belief that an ambulance would be necessary as the impacted vehicle was pinned to the barricade.

37. Plaintiff stopped his vehicle approximately 60 feet from the Honda. As Plaintiff was exiting his vehicle, he observed the driver of the Honda exit his vehicle and flee the scene on foot by jumping off the Cross-Island Parkway to an adjacent highway below.

38. Plaintiff proceeded toward the collision and assessed that the driver of the impacted vehicle was severely injured.

39. At this time, the passenger of the Honda exited the vehicle and advanced toward Plaintiff. Plaintiff observed that the passenger had hidden his hand within the waistband of his shorts.

40. Consistent with his law enforcement training and experience, Plaintiff commanded the passenger to "get back" while Plaintiff proceeded to walk backward.

41. Within seconds, however, the passenger charged toward Plaintiff. Plaintiff was unable to reasonably determine whether the assailant was holding a weapon in the hand that was hidden in his shorts.

42. Based on the totality of the circumstances, Plaintiff was reasonably in fear for his personal safety and his life.

43. Consistent with his law enforcement training and experience, as well as Penal Law Article 35, and in fear of his safety, Plaintiff drew his registered personal firearm, identified himself as a police officer, and ordered the passenger to get on the floor.

44. After observing Plaintiff's firearm, the passenger complied with Plaintiff's orders and laid on the ground.

45. Civilian witness Mia Blackwell ("Ms. Blackwell") was an eyewitness to the incident.

46. Ms. Blackwell assisted Plaintiff by retrieving handcuffs from Plaintiff's personal vehicle.

47. Plaintiff remained on the phone with the 911 dispatcher throughout the entire

incident and detained the passenger until responding police officers arrived.

48. The responding police officers searched the Honda and located a knife in the shape of a dagger behind the passenger seat of the vehicle.

49. Once the officers processed the accident, Plaintiff was advised to call the police station for a full report.

50. Plaintiff's actions were fully investigated by the NYPD and MTA Triborough Bridge and Tunnel Authority, who determined that Plaintiff acted lawfully.

51. Plaintiff was not charged or arrested in connection with this incident, nor was there a finding of wrongdoing on Plaintiff's part.

### *Plaintiff Promptly Notified NYCD of the Incident*

52. After the July 25, 2020 incident, Petitioner promptly notified ESU Captain Flemings of the events and the information was reported up the chain of command, ultimately resulting in the creation of an internal Central Operations Desk ("COD") report.

### *Plaintiff Objected to the Initial Seizure of Sig Sauer P365 Handgun and M&P15 Rifle*

53. On July 25, 2020, Defendant Sarena Townsend, Deputy Commissioner of Investigation and Trials for the NYCD and Ruben Benitez, ordered Petitioner's suspension without pay as well as the seizure of Plaintiff's personal firearms[1].

54. Defendants had not conducted any independent investigation of the July 25, 2020 events before suspending Plaintiff.

55. At approximately 12:00 p.m. on July 25, 2020, Investigator Deion Islar and Christopher Dixon arrived at Plaintiff's residence and suspended Plaintiff for 30 days without pay.

---

[1] The term "firearm" is inclusive herein of handguns, rifles, and shotguns and not, as defined I the New York State Penal Law, limited to "handguns".

56. Defendants Islar and Dixon confiscated Petitioner's NYCD identification and NYCD Shield, in accordance with the agency's protocols for suspensions.

57. Investigators Islar and Dixon then ordered Plaintiff to turn over *all* personal handguns and long guns.

58. Plaintiff owned and was in possession of (i) a Glock 19 handgun, (ii) a Sig Sauer P365; and (iii) Smith & Wesson M&P 15 rifle.

59. Plaintiff did not object to the initial seizure of his Glock 19 handgun.

60. Under NYCD policies and procedures, Plaintiff's Glock 19 handgun was on the NYCD list of "authorized" personal handguns and had been registered by the NYCD for off-duty carry.

61. Plaintiff's Glock 19 handgun was also approved by, and registered with, the NYCD for Plaintiff's official on-duty firearm carry in his position as an ESU Officer and was subject to required surrender upon initial suspension under NYCD policies.

62. However, Plaintiff specifically protested and objected to the seizure of his Sig Sauer P365 handgun and his Smith & Wesson M&P 15 rifle by Defendants Islar and Dixon.

63. Plaintiff explained to Defendants Islar and Dixon that neither they nor anyone else from the NYCD had any authority to seize, nor any authority over, his Sig Sauer handgun or his M&P 15 rifle.

64. In fact, no Defendant had the legal authority or privilege to seize Plaintiff's M&P 15 rifle or his Sig Sauer P365 handgun.

65. No search or seizure warrant exists authorizing the seizure or retention of Plaintiff's Sig Sauer P365 handgun and/or his M&P 15 rifle and no exception to the warrant

requirement existed to seize Plaintiff's Sig Sauer P365 handgun and/or his M&P 15 rifle.

66. Plaintiff's firearms were lawfully possessed by Plaintiff; they were not evidence of a crime nor were they contraband.

67. Plaintiff explained to Defendants Islar and Dixon that his Sig Sauer P365 handgun is his personally owned handgun authorized by Plaintiff's Military Police Commander for Plaintiff to carry during his service in the Army National Guard.

66. Over Plaintiff's objections, Defendants Islar and Dixon seized Plaintiff's Sig Sauer P365 and Smith & Wesson M&P 15 rifle.

67. Notwithstanding that Plaintiff had committed no criminal offense and had no disqualifiers to firearm possession, Defendants had no legal jurisdiction or authority to seize Plaintiff's Sig Sauer P365 or M&P 15 rifle.

68. Defendants Islar and Dixon acted independently when seizing Plaintiff's Sig Sauer P365 and M&P 15 rifle.

69. Defendants Islar and Dixon acted at the direction of Defendants Townsend and/or Benitez when seizing Plaintiff's Sig Sauer P365 and M&P 15 rifle.

*Multiple Requests for the Return of Plaintiff's Sig Sauer P365 Handgun and M&P15 Rifle*

70. Defendants had no cognizable legal authority to seize Plaintiff's Sig Sauer P365 Handgun or his M&P 15 rifle.

71. Defendants have no cognizable legal authority for refusing to return Plaintiff's Sig Sauer P365 handgun or M&P 15 rifle.

72. Multiple requests have been made by Plaintiff directly and/or through his counsel to Defendants Townsend and Benitez for the return of Plaintiff's Sig Sauer P365 handgun.

73. Multiple requests have been made by Plaintiff directly and/or through his counsel to Defendants Townsend and Benitez for the return of Plaintiff's M&P 15 rifle.

74. Defendants Townsend and Benitez have consistently refused to return Plaintiff's Sig Sauer P365 handgun and M&P 15 rifle.

75. Defendants Townsend and Benitez have been informed that Plaintiff's Sig Sauer P365 was issued in connection with, and is required for his service with, the Army National Guard.

76. The acts and omissions of Defendants Townsend and Benitez are negatively affecting Plaintiff's mission readiness in the Army National Guard as related to his weapons efficiency and qualifications.

77. Defendants Townsend and Benitez were personally informed that their refusal to return Plaintiff's Sig Sauer P365 is negatively affecting Plaintiff's mission readiness in the Army National Guard as related to his weapons efficiency and qualifications.

78. The actions and omissions of Defendants Townsend and Benitez are negatively affecting Plaintiff's ability to protect himself.

79. Defendants' actions were undertaken, and continue to be undertaken, with actual malice and in deliberate disregard for Plaintiffs' property rights and due process rights as protected by the Constitution.

80. Notwithstanding that Defendants have no jurisdiction over Plaintiff's Sig Sauer P365 or his M&P 15 rifle and no legal authority or privilege for the initial seizure or continued retention of Plaintiff's property:

- Townsend and Benitez continue to unlawfully retain such property knowing that Plaintiff committed no criminal act;

- Townsend spoke with NYPD Captain Yam and an MTA TBTA Lieutenant Aristizabal on July 28, 2020 who confirmed that Plaintiff acted lawfully, reasonably, and well within his authority during the events of July 25, 2020; Townsend also read Lieutenant Aristizabal's written report, which commended Plaintiff's actions;

- Townsend and Benitez continue to unlawfully retain such property knowing that, even if Plaintiff had committed a criminal act on July 25, 2020 they have no jurisdiction to seize or retain such property;

- Townsend's personal malice is borne out through the expressions of her personal opinion, "I don't feel like you should have gotten out of your car" and "I don't feel like you should have pulled your gun out on the passenger" even though he was advancing on Plaintiff with his hand in his waistband in contravention of Plaintiff's verbal commands that he was a law enforcement officer and to stay back; and

- Townsend and Benitez continue to unlawfully retain Plaintiff's firearms even after listening to the 911 recording, which confirmed the veracity of Petitioner's statements, his lawful actions, and the sequence of events.

81. An NYCD Range Instructor with 20+ years of experience informed Plaintiff that his actions on July 25, 2020 exhibited efficient and proper with the handling of his firearm and effected the passenger's arrest consistent with the training Plaintiff received under NYCD departmental guidelines.

## FIRST AMENDMENT RETALIATION

82. When Plaintiff contacted Defendants Townsend and Benitez about the return of his Sig Sauer P365 and M&P 15 rifle in the Fall 2020, Captain Fuller of the Investigations Unit informed him that Townsend instructed her to tell Plaintiff, "You call here again and we will file Harassment charges against you with the NYPD. You not getting it back."

83. On March 19, 2021, Plaintiff filed an employment-related Article 78 proceeding against Defendants Townsend and Benitez, <u>in their official capacities only</u>, which is pending in the New York County Supreme Court.

84. Plaintiff's Article 78 proceeding does not involve or seek the return of the property/firearms that are the subject of this action.

85. Immediately after Plaintiff filed the Article 78 proceeding naming Townsend and Benitez, Townsend and/or Benitez placed Plaintiff's name on the list of correction officers to be transferred from the ESU Unit to the regular jail detail – a less prestigious position within the NYCD.

86. Plaintiff's transfer to the jail assignment renders his experience and background less attractive to potential employers and has a negative effect on his earning potential and career goals.

87. Townsend and/or Benitez transferred Plaintiff to a jail assignment punitively and in retaliation for his filing of an Article 78 proceeding.

88. Townsend and/or Benitez transferred Plaintiff to a jail assignment punitively and in retaliation for his inquiries concerning the return of his personal property, as detailed herein.

89. Townsend and/or Benitez transferred Plaintiff to a jail assignment punitively and in retaliation for his inquiries concerning his return to the ESU and the restoration of his employment status and privileges.

90. On or about April 20, 2021, Benitez was contacted by Major Kenniff of the New York Army National Guard regarding the return of Plaintiff's Sig Sauer P365 handgun in connection with his service duties.

91. Benitez informed Major Kenniff, in substance, that Plaintiff's Sig Sauer P365 will not be returned because Plaintiff "filed a lawsuit, which makes it difficult to release anything" so long as the litigation is pending.

92. Benitez did not offer any other reason for the seizure or the continued retention of Plaintiff's Sig Sauer P365 or his M&P 15 rifle by himself and Townsend.

93. Defendants Benitez and Townsend continue to violate Plaintiff's Fourth and Fourteenth Amendment rights in retaliation for the filing of the Article 78 proceeding, which seeks, *inter alia,* the return of the Glock handgun used and possessed in the course of Plaintiff's duties with the ESU/NYCD.

94. As a result of Defendants' actions and omissions, Plaintiff continues to suffer, *inter alia*, an adverse and retaliatory employment action; actual economic loss; loss of the possession, use and enjoyment of his personal property, to wit, the Sig Sauer P365 handgun and M&P 15 rifle; harm to his professional and personal reputation; embarrassment; and mental anguish.

95. As a direct and proximate cause of Defendants' actions and omissions, Plaintiff claims compensatory, economic, and punitive damages, attorney's fees, injunctive relief, costs and disbursements.

96. As a direct and proximate cause of Defendants' actions and omissions, Plaintiff has been caused to suffer, *inter alia*, economic loss of no less than $2,500, compensatory damages of no less than $10,000, punitive damages in an amount of no less than $50,000 as to each of the individual defendants, and the cognizable violation of his constitutionally protected rights warranting damages *per se* in at least a nominal amount.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Defendants Islar, Dixon, Townsend and Benitez)

97. Repeats and realleges paragraphs 1 through 96 as if fully set forth herein.

98. Under the theory that the defendants violated Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 by the unreasonable seizure of Plaintiff's Sig Sauer P365 and M&P rifle.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Defendants Islar, Dixon, Townsend and Benitez)

99. Repeats and realleges paragraphs 1 through 98 as if fully set forth herein.

100. Under the theory that the defendants violated Plaintiff's Fourteenth Amendment rights to pre-deprivation due process under 42 U.S.C. § 1983 in connection with the seizure of his personal property.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Defendants Townsend and Benitez)

101. Repeats and realleges paragraphs 1 through 100 as if fully set forth herein.

102. Under the theory that defendants Townsend and Benitez violated Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 by continuing the unlawful retention of Plaintiff's personal property.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Defendants Townsend and Benitez)

103. Repeats and realleges paragraphs 1 through 102 as if fully set forth herein.

104. Under the theory that defendants Townsend and Benitez violated Plaintiff's Fourteenth Amendment rights to post-deprivation due process under 42 U.S.C. § 1983 by providing no process through which Plaintiff can recover his personal property.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Defendants Townsend and Benitez)

105. Repeats and realleges paragraphs 1 through 104 as if fully set forth herein.

106. Under the theory that defendants Townsend and Benitez violated Plaintiff's First Amendment rights under 42 U.S.C. § 1983 by retaliating against him for exercising his constitutional rights.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (*Monell* Liability Against New York City)

107. Repeats and realleges paragraphs 1 through 106 as if fully set forth herein.

108. Under the theory that New York City is liable for the acts and omissions of the individually named defendants for violating Plaintiff's constitutionally protected rights.

WHERFORE, a Judgment is respectfully requested against the defendants and in favor of the plaintiff:

- Ordering the return of plaintiff's property/firearms;

- Awarding against each and every defendant compensatory damages as the jury may determine;

- Awarding against each and every individual defendant punitive damages in an amount to be determined by a jury;

- Awarding against each and every defendant economic damages;

• Awarding costs, disbursements, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

• Granting such other and different relief as the Court deems just, equitable, and proper.

Dated: April 22, 2021
      Scarsdale, New York

                              THE BELLANTONI LAW FIRM, PLLC
                              *Attorneys for Plaintiff*

                    By: _____/s/_____
                              Amy L. Bellantoni (AB3061)
                              2 Overhill Road, Suite 400
                              Scarsdale, New York 10583
                              (914) 367-0090 (t)
                              (888) 763-9761 (f)
                              abell@bellantoni-law.com