UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANDRE ANDERSON,

            Plaintiff,

    -against-                                             21-cv-03569 (LAK)

SARENA TOWNSEND, et al.,

            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

>   Amy L. Bellantoni
>   THE BELLANTONI LAW FIRM
>   *Attorneys for Plaintiff*

>   Kami Z. Barker
>   Assistant Corporation Counsel of the City of New York
>   GEORGIA M. PESTANA
>   CORPORATION COUNSEL OF THE CITY OF NEW YORK
>   *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against four city employees and the City of New York in connection with his suspension from duty as a New York City Department of Correction ("DOC") Officer. The matter is before the Court on defendants' motion under Rule 12(b)(6) to dismiss the complaint for failure to state a legally sufficient claim.

## *Facts*

As alleged in the complaint, plaintiff Andre Anderson is a DOC Correction Officer who was suspended from duty following an off-duty motor vehicle accident on July 25, 2020. By his telling, plaintiff was driving home when he was rear-ended by another motorist who fled the accident scene when plaintiff insisted that they exchange insurance information. The complaint states that plaintiff pursued the occupants of the departing vehicle, first by car and then on foot, eventually "dr[awing] his registered personal firearm, identifying himself as a police officer, and order[ing] [a] passenger to get to the floor."[1] It states further that DOC suspended plaintiff from duty that same day, triggering a "required surrender" of certain personal firearms "under [DOC's suspension] policies."[2]

Plaintiff "did not object to the initial seizure" of his registered on-duty firearm, a personally owned Glock 19, by defendants Islar and Dixon at his residence.[3] However, he alleges that DOC investigators improperly seized two other weapons: plaintiff's Sig Sauer P365 ("P365") handgun and his Smith & Wesson M&P 15 ("M&P 15") rifle.[4]

The relevant DOC regulation provides that Members of the Department, upon initial suspension from duty, "shall . . . surrender all handguns that they own or possess" and that the agency may revoke permission to "carry or possess, [*sic*] firearms" upon assignment modification.[5]

---

[1] Complaint [Dkt. 1] (hereinafter "Compl.") ¶ 43.

[2] *Id.* ¶¶ 53, 59-61.

[3] *Id.* ¶¶ 59-61.

[4] *Id.* ¶¶ 58-65.

[5] DOC Directive 7504R-A, *Suspension from Duty And/Or Placement On Modified Assignment* (2000) (hereinafter "DOC Directive 7504R-A") § III.

3

Plaintiff alleges that he contacted DOC personnel in "Fall 2020"[6] to inquire about the return of his P365 and M&P 15 firearms and that both he and his counsel have made "[m]ultiple requests" to that end.[7] The complaint asserts that plaintiff thereafter filed an employment-related Article 78 proceeding, which remains pending against defendants Townsend and Benitez in New York Supreme Court.[8] Plaintiff alleges further that defendants retaliated against him for his repeated internal inquiries and for filing the Article 78 proceeding, including by transferring him to a less prestigious assignment within DOC.[9] Plaintiff, who serves also as a military police officer in the New York Army National Guard, alleges that defendants have impaired his ability to protect himself, compromised his weapons efficiency as a national guardsman, and caused him embarrassment, economic loss, and mental anguish, among other harms.[10]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his First, Fourth, and Fourteenth Amendment rights. He asserts a First Amendment claim against defendants Townsend and Benitez, Fourth and Fourteenth Amendment claims against all individual defendants, and a *Monell* claim against the City of New York on the theory that the City is "liable for the acts and omissions of the individually named defendants" in violation of "Plaintiff's constitutionally protected rights."[11]

---

[6]  *Id.* ¶ 82.

[7]  *Id.* ¶¶ 68-69.

[8]  *Id.* ¶¶ 82-83.  The complaint states that defendant Townsend is DOC's Deputy Commissioner of Investigation and Trials and that defendant Benitez is its Assistant Commissioner of Investigation and Trials.

[9]  *Id.* ¶¶ 83-89.

[10]  *Id.* ¶¶ 78-96.

[11]  Compl. ¶¶ 97-108.

***Discussion***

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face."[12] This standard is met where the "pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] The Court accepts as true all well-pleaded factual allegations and "draw[s] all reasonable inferences in the plaintiffs' favor."[14] However, this tenet is "inapplicable to legal conclusions" and to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[15]

At the motion-to-dismiss stage, courts may consider "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[16] Judicial notice may be taken of documents "integral to the complaint,"[17] as well as of certain matters of public record, such as agency rules and regulations.[18]

To prevail on a Section 1983 claim, plaintiff must establish (1) a "violation of a right secured by the Constitution or laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under the color of state law."[19]

---

[12] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[14] *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

[15] *Iqbal*, 556 U.S. at 678.

[16] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[17] *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).

[18] *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972).

[19] *West v. Atkins*, 487 U.S. 42, 48 (1988).

*First Amendment Claim*

As articulated in the Complaint, plaintiff's First Amendment claim is that defendants Townsend and Benitez retaliated against him for "exercising his constitutional rights."[20] For his claim to survive this Rule 12(b)(6) motion, plaintiff must plausibly allege that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."[21] In substance, plaintiff's alleged protected activities were (1) "filing . . . an Article 78 proceeding,"[22] (2) "inquiries concerning his personal property,"[23] and (3) "inquiries concerning . . . restoration of his employment status and privileges."[24]

Plaintiff's First Amendment claim fails at the outset because it does not plausibly allege constitutionally protected speech. Whether a public employee's speech is protected depends on (1) "whether the employee spoke as a citizen on a matter of public concern" and (2), if so, "whether the government employer had an adequate justification for treating the employee differently from any other member of the general public."[25]

First, the complaint does not allege that plaintiff spoke as a citizen rather than solely as a DOC employee. To determine whether a public employee speaks as a citizen, courts ask: "(A) did the speech fall outside of the employee's 'official responsibilities,' and (B) does a civilian

---

[20] Compl. ¶ 106.

[21] *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

[22] *Id.* ¶ 87.

[23] *Id.* ¶ 88.

[24] *Id.* ¶ 89.

[25] *Garcetti v. Ceballos*, 547 U.S. 410, 410 (2006).

analogue exist?"[26] The Second Circuit has held that judicial inquiry into whether a public employee speaks pursuant to official duties is "not susceptible to a brightline rule."[27] Rather, it turns on "contextual factors," such as "whether the complaint was also conveyed to the public" and whether a link exists between the plaintiff's job responsibilities and the alleged speech.[28]

Here, all three forms of communication for which plaintiff alleges retaliation concerned the consequences of his suspension and his ongoing employment status. Each communication sought specific relief from internal DOC processes relevant to plaintiff only because he is employed there. Although the events leading to plaintiff's suspension occurred while he was off duty, his authorization to carry an off-duty firearm owed entirely to his official duties as a Correction Officer. Accordingly, there is a tight relationship between the nature of plaintiff's job responsibilities and his objections to the manner and consequences of his suspension from performing them. There plainly is no civilian analogue to that speech. As defendants observe in their reply, private citizens have no occasion to object to firearms seizures pursuant to DOC's internal employment regulations.

Second, plaintiff has not alleged adequately that he spoke on any matter of public concern. Speech on a purely private matter, "such as an employee's dissatisfaction with the conditions of his employment," does not pertain to a matter of public concern.[29] Plaintiff argues that his demands for defendants to return the P365 and M&P 15 firearms were of public concern because "his [P365], is . . . used during the course of his service as a Military Police Officer in the national

---

[26] *Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir. 2015).

[27] *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012).

[28] *Id.*

[29] *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999).

guard–serving the public."[30] Regardless of whether either firearm was integral or even related to his service as a national guardsman, plaintiff has not alleged sufficiently that the *content of his speech* contained a subject of general interest and of value and concern to the public. Indeed, the Second Circuit has held that a "public employee may not transform a personal grievance into a matter of public concern" by invoking generalized public interest in a civic institution or its function.[31] Thus, because plaintiff's alleged communications "concern[] essentially personal grievances and the relief he seeks is for himself alone," his complaint raises no plausible claim that his alleged speech was constitutionally protected.[32]

*Fourth Amendment Claims*

Plaintiff makes two Fourth Amendment claims. The first, asserted against all individual defendants, concerns the allegedly "unreasonable seizure of Plaintiff's Sig Sauer P365 and M&P rifle."[33] The second, asserted against defendants Townsend and Benitez, is for the "continuing the unlawful retention of Plaintiff's personal property."[34]

    *A.*    *The Initial Seizure*

        *I.*    *"Required Surrender" Under DOC's Suspension Policy*

The Fourth Amendment "protects people from unreasonable searches and seizures

---

[30] Dkt. 24 at 14.

[31] *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008).

[32] *Id.*

[33] Compl. ¶ 98.

[34] *Id.* ¶ 102.

8

of 'their persons, houses, papers, and effects.'"[35] Plaintiff's Fourth Amendment rights are implicated only if defendants infringed "an expectation of privacy that society is prepared to consider reasonable."[36] Searches and seizures by government employers or supervisors of their employees' private property are subject to the restraints of the Fourth Amendment.[37] To determine whether a search or seizure is reasonable, courts consider "whether the action was justified at its inception."[38] Both the Supreme Court and Second Circuit have suggested that government employees' privacy expectations are diminished in certain employer search-and-seizure contexts on account of "operational realities" of the particular employment.[39]

As an initial matter, the complaint concedes that DOC's initial seizure of plaintiff's Glock 19 at his residence was justified at its inception.[40] It does not challenge the initial suspension, DOC's suspension policy, nor the "required surrender" procedure within that policy. Nor does plaintiff imply that DOC personnel entered his home without justification or that they otherwise seized his Glock 19 unlawfully. The complaint admits that plaintiff "did not object to the initial seizure" of the Glock 19. It contends only that plaintiff "specifically protested and objected to the seizure of the [P365] and [M&P 15]."[41]

---

[35] *Soldal v. Cook County*, 506 U.S. 56, 62 (1992) (quoting U.S. CONST. AMEND. IV).

[36] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

[37] *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987).

[38] *Id.* at 725-26.

[39] *City of Ontario v. Quon*, 560 U.S. 746, 757 (2010); *Leventhal v. Knapek*, 266 F.3d 64, 73 (2d Cir. 2001).

[40] Compl. ¶¶ 59-61.

[41] *Id.* ¶ 62.

Because the complaint acknowledges that the "required surrender" pursuant to DOC policy was valid at its inception, plaintiff's claim necessarily is that officials acted beyond the scope of DOC policy when they seized the P365 and M&P 15.[42] Defendants argue that their seizure was "obviously justified, as DOC policy mandates the seizure of all firearms at the time of suspension."[43] Plaintiff rejoins that only the Glock 19 was subject to required surrender because neither of the other two weapons had been "registered with [DOC] as his *approved on-duty* handgun."[44] The regulation, however, plainly states that Members of the Department "shall . . . surrender *all handguns* that they own or possess"[45] upon initial suspension from duty. The regulation makes no distinction between "approved on-duty" handguns and all other handguns DOC employees may own or possess. Plaintiff has not alleged any facts that suggest that his second handgun was exempt from the regulation that he says justified the initial Glock 19 seizure.[46] Accordingly, the complaint does not sufficiently allege a Fourth Amendment violation as to the initial seizure of his P365.

---

[42] Because the complaint relies substantially upon plaintiffs' claim that the P365 and M&P 15 were not subject to required surrender under DOC policy–a policy he does not challenge either generally or as applied to him–the Court views DOC Directive 7504R-A as incorporated by reference. Similarly incorporated is DOC's firearms policy, DOC Directive 4511R-B, which governs procedure for returning confiscated firearms and restoring DOC employees' firearm privileges. DOC Directive 4511R-B, *Firearms Policy and Procedures* (2017) (hereinafter "DOC Directive 4511R-B"). The latter regulation is integral to plaintiff's claim that "[d]efendants have no cognizable legal authority for refusing to return" the P365 or M&P 15. Compl. ¶ 71. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

[43] Dkt. 17 at 22 (emphasis in original).

[44] Dkt. 24 at 7 (emphasis in original).

[45] DOC Directive 7504R-A § III(B)(3)(b) (emphasis added).

[46] Compl. ¶ 94.

10

### ii. *Qualified Immunity*

While the DOC's suspension regulation does not immediately resolve the Fourth Amendment claim as to the seizure of the M&P 15 rifle, that claim necessarily fails because individual defendants' qualified immunity defense is apparent from the face of the complaint.

When determining a Rule 12(b)(6) motion to dismiss on qualified immunity grounds, the court asks "whether a reasonable government officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right."[47] District courts may grant a Rule 12(b)(6) motion on qualified immunity if "the facts supporting the defense appear on the face of the complaint"[48] and where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[49]

As alleged in the complaint, defendants arrived at plaintiff's residence on the day of the accident to inform he that he was suspended for thirty days without pay, seize his personally owned firearms, and confiscate his DOC identification and shield "in accordance with the agency's protocols for suspensions."[50] The complaint acknowledges that defendants validly seized at least one handgun pursuant to these regulations while present at his residence. And while DOC's "procedure for employee on suspension" provides only for the initial surrender of "all handguns," other provisions of Directive 7504A-R permit DOC personnel to revoke an employee's permission

---

[47] *In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924 (CM)(GWG), 2021 WL 2894764, at *17 (S.D.N.Y. July 9, 2021).

[48] *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004).

[49] *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992).

[50] Compl. ¶¶ 55-57.

to "carry or posses, [sic] firearms,"[51] or "purchase a personal firearm"–not just handguns–if certain conditions obtain.[52] To the extent the complaint admits that defendants were entitled to seize at least some job-related personal property under that regulation, it was objectively reasonable for defendants to believe that their actions were lawful–even *required*–once defendant surrendered the first handgun without objection. Moreover, the Supreme Court's softened reasonableness inquiry in work-related Fourth Amendment contexts adds weight to the inevitable conclusion that reasonable officers could disagree as to whether seizing all three weapons would violate a clearly established constitutional right.[53] Accordingly, the complaint has not sufficiently alleged a Fourth Amendment claim on which relief can be granted.

### B. "Continued Retention"

Plaintiff's second Fourth Amendment claim, asserted against defendants Townsend and Benitez, is for the "continuing the unlawful retention of Plaintiff's personal property."[54]

The Court is unaware of any precedent in this Circuit that finds a distinct Fourth Amendment claim for "continued retention" of personal property where plaintiffs already challenge the reasonableness of the initial seizure.[55] The Second Circuit has held that where the reasonableness of an initial seizure is adjudicated, "failure to return the items does not, by itself,

---

51  DOC Directive 7504R-A § III(F)(3).

52  *Id.* § III(G).

53  *O'Connor v. Ortega*, 480 U.S. 709, 725-26 (1987).

54  Compl. ¶ 102.

55  See *Krimstock v. Kelly*, 306 F.3d 40, 48-50 (2d Cir. 2002) (addressing Fourth Amendment claims for "continued retention" of seized property where the validity of the initial seizure was not subject to challenge).

state a separate Fourth Amendment claim."[56] Plaintiff's rights with regard to the ongoing retention or return of his seized property are a question of Fourteenth Amendment due process, not of the Fourth Amendment.[57]

*Fourteenth Amendment Claim*

Plaintiff brings two Fourteenth Amendment claims: one against all individual defendants for violations of "pre-deprivation due process"[58] rights, and a second against defendants Townsend and Benitez for violations of "post-deprivation due process" rights.[59] To determine how much process was due, the Court must weigh (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."[60]

A.  *Predeprivation Process*

Although due process normally requires that persons receive notice and a hearing before state action deprives them of property, there are circumstances in which "the lack of . . . predeprivation process will not offend the constitutional guarantee of due process, provided there

---

[56] *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012)

[57] *See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) ("To the extent the Constitution affords . . . any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process.").

[58] Compl. ¶ 100.

[59] *Id.* ¶ 104.

[60] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

13

is sufficient postdeprivation process."[61] Predeprivation process is not constitutionally required in situations requiring "quick action by the State" or where "the impracticality of providing any meaningful predeprivation process" requires that state action be assessed "some time after the initial taking."[62] When reviewing alleged procedural due process violations, the Supreme Court has distinguished between "(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."[63] In the latter case, the Due Process Clause "is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy."[64] However, when the deprivation occurs "in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process."[65]

Because plaintiff does not challenge DOC's suspension policy, the decision to suspend him from his duties, or the initial surrender of his Glock 19, shield, and identification, his claim reduces to whether defendants acted beyond this policy's scope or applied it in an unauthorized way. However, the Supreme Court has held that a plaintiff alleges no due process violation for want of predeprivation process where "deprivations of property are effected through random and unauthorized conduct of a state employee . . . since the state cannot know when such

---

61  *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999).

62  *Id.*

63  *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted).

64  *Id.*

65  *Id.*

deprivations will occur."[66] Thus, to plead a predeprivation due process violation here, plaintiff would have to allege both that defendants were acting pursuant to established procedure and that the procedure itself was constitutionally deficient. He has not done so.

But even if plaintiff had alleged that defendants acted pursuant to an established state procedure, his claim would fare no better. The automatic surrender of all handguns without a predeprivation hearing serves an exceptionally strong governmental interest: controlling the use of force by correction officers, especially those officers whose fitness to use force may be in question.[67] Here, DOC's procedures temporarily restrict a suspended employee's ability to use deadly force while the agency makes initial findings as to the underlying grounds of suspension.[68] DOC's interest in protecting the safety of both its institutions and their populations and that of the general public during initial disciplinary fact-finding outweighs both plaintiff's private interests in maintaining personal handguns at his home during that period as well as the risk of erroneous deprivations, which has been mitigated by DOC's extensive post-suspension remedies as discussed below.[69] Thus, plaintiff's due process claim turns only on whether he was afforded a meaningful postdeprivation remedy.

---

[66] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

[67] *See id.* at 527 ("The administration of a prison, we have said, is 'at best an extraordinarily difficult undertaking.'") (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

[68] *See* DOC Directive 7504R-A § III(A)(8) (requiring that a Commanding Officer complete and submit the "Memorandum of Complaint" within two business days); *see also id.* § III(B)(3)(g) (permitting the suspended employee to file a written request to be restored to duty or be placed on modified assignment after a period of ten days).

[69] *See Freeman v. Kirisits*, 814 F. App'x 34, 38 (2d Cir. 2020) (upholding a New York State Office of Mental Health worker's suspension absent predeprivation hearing on account of the government's "obviously high" interest in avoiding significant interference with the operations of a mental health facility, despite plaintiff's argument that defendants acted pursuant to "state procedures, rather than random acts").

15

B.  *Postdeprivation Process*

Where a state employee intentionally deprives an individual of property without a predeprivation hearing based on "the need for quick action by the State or the impracticality of providing any meaningful predeprivation process," the Fourteenth Amendment's Due Process Clause requires a "meaningful postdeprivation remedy."[70]

Defendants move to dismiss plaintiff's procedural due process claims on the grounds that plaintiff is entitled to "a full panoply of remedies as a permanent DOC employee," such as "pre-deprivation disciplinary hearings," the opportunity to "respond to allegations throughout the course of an investigation," and "availability of Article 78 review."[71] The Court notes that the first two remedies defendants enumerate are insufficient. Due Process commands that plaintiff have access to a meaningful post-deprivation remedy with respect to his seized property, not just the suspension. On the facts alleged, neither a pre-deprivation disciplinary hearing–which is not provided within the context of the DOC suspension procedures applicable here–nor a general opportunity to "respond to allegations" would provide plaintiff with a sufficient remedy under these circumstances.

The availability of Article 78 review is another matter. The Second Circuit recently held that availability of Article 78 review, without more, failed to satisfy a plaintiff's due process rights where county sheriffs had seized personal firearms from her home without a predeprivation hearing.[72] The Circuit there held that "in light of the burdens an Article 78 proceeding places on [a] person whose longarms have been taken," there is "a significant risk of erroneous deprivation of that

---

[70]  *Hudson*, 468 U.S. at 531.

[71]  Dkt. 27 at 13.

[72]  *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017).

person's interests in her longarms" if the government fails to provide some alternative forum that is "prompt," "timely" and "inexpensive."[73]

While the Court notes that the *Mathews* factors likely weigh differently in this case,[74] it need not decide whether the availability of Article 78 review independently would satisfy plaintiff's due process rights. This is so because DOC regulations provide for prompt, timely, and inexpensive alternatives. At the command level, DOC's firearm regulations allow employees to seek a postdeprivation remedy by filing a Form 4511-F "Request for Restoration of Firearm Privileges," which requires the commanding officer to issue a determination within thirty business days.[75] Employees may also obtain higher-level review along a variety of avenues, including through a "Firearms Review Board," by the Assistant Commissioner of Trials and Litigation, and/or by the Deputy Commissioner for Investigations.[76] The complaint does not allege that defendants improperly withheld those remedies or that they were otherwise unavailable to him.[77] Accordingly, it does not adequately allege any due process violation.

---

[73] *Id.* at 218-19.

[74] For instance, the government has additional interests in this case with respect to controlling public employees' access to firearms where those employees' official duties contemplate the use of force.

[75] DOC Directive 4511R-B § III(G).

[76] *Id.* § III.

[77] *See, e.g., Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (holding that the procedural remedy need only be available and that plaintiff may not "resuscitate" a due process claim on the ground that it is time-barred in another forum).

17

*Adequacy Under* Monell

Finally, plaintiff brings a generalized Section 1983 claim against the City of New York on the theory that the City is "liable for the acts and omissions of the individually named defendants" that violated "Plaintiff's constitutionally protected rights."[78] Because the complaint fails to allege sufficiently any First or Fourteenth Amendment violation, the Court addresses this theory of liability only with respect to the Fourth Amendment.[79]

In *Monell v. New York City Dept. of Social Servs.*,[80] the Supreme Court clarified that a municipality may be directly liable under Section 1983 if the governmental body "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.[81] However, local governments are not vicariously liable under Section 1983 for their employees' or agents' actions under a theory of *respondeat superior*.[82] Rather, they are responsible only for "their *own* illegal acts."[83] A plaintiff who seeks to impose Section 1983 liability on a local government must show that a governmental custom, policy, ordinance, regulation, or decision inflicts injury upon the plaintiff.[84] Such a claim has three elements: "(1) an official policy or custom that (2)

---

[78] Compl. ¶¶ 97-108.

[79] *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (holding that district court did not err by declining to address *Monell* liability upon concluding that there had been no underlying constitutional violation).

[80] 436 U.S. 658 (1978).

[81] *Id.*; *see Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).

[82] *Monell*, 436 U.S. at 692-93.

[83] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

[84] *Monell*, 436 U.S. at 690-91.

causes the plaintiff to be subjected to (3) a denial of a constitutional right."[85] While municipal policy is normally set by a lawmaking body, the acts and pronouncements of a single official may constitute policy if that official is the final policymaker" concerning the matter in issue.[86]

Here, plaintiff fails to state a *Monell* claim because he has not alleged that a municipal policy or custom caused any violation of his rights. The complaint does not challenge any of DOC's extensive written policies on employee suspensions or administrative remedies. Neither does it allege any persistent or widespread failure to implement DOC policy, deliberate indifference to DOC policy, or a *de facto* alternative policy suggesting that DOC itself was the "moving force" behind the alleged injury.[87] Instead, it contends that "Defendants Islar and Dixon acted independently"[88] when they seized the P365 and M&P 15. That assertion is inconsistent with any *Monell* theory of municipal liability.

To be sure, the complaint asserts also that "Defendants Islar and Dixon acted at the direction of Defendants Townsend and/or Benitez"[89] when seizing weapons. Still, it does not plausibly allege that either of those defendants had final policymaking authority. Instead, it asserts that defendant Townsend "is the *de facto* decision maker with regard to the release and return of handguns, rifles, and shotguns personally owned by [DOC officers]."[90] As defendants note in their papers, that assertion is legally irrelevant because the Supreme Court has rejected the "vague

---

[85] *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

[86] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

[87] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 397 (1997).

[88] Compl. ¶ 68.

[89] *Id.* § 69.

[90] Compl. ¶ 8.

concept of '*de facto* final policymaking authority'" as a basis for municipal liability under *Monell*.[91] And even where a city "go[es] along with discretionary decisions made by [its] subordinates," that does not amount to "a delegation to them of the authority to make policy."[92] Indeed, the unchallenged DOC Directive 7504R-A both sanctions and sets boundaries for exercises of discretion by defendants Townsend and Benitez in their respective roles as the Deputy and Assistant Commissioners of Investigation and Trials.[93] The complaint does not plausibly allege that the individual defendants did more than apply valid written policy when they seized plaintiff's firearms in connection with the initial suspension. Thus, defendant has stated no valid claim against the City of New York.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss the complaint [Dkt 15] is granted in all respects.

SO ORDERED.
Dated: November 17, 2021

Lewis A. Kaplan
United States District Judge

---

[91] *City of St. Louis*, 485 U.S. at 131.

[92] *Id.* at 130.

[93] Compl. ¶¶ 6, 9; *see, e.g.*, DOC Directive 7504R-A §§ III(D)(5); *cf. Tipaldo v. Lynn*, 284 A.D.2d 142, 142 (1st Dept. 2001) (upholding trial judge's conclusion that plaintiff failed to show that either the Commissioner or First Deputy Commissioner of the New York City Department of Transportation exercises final policymaking authority as to that agency's personnel actions).