UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANDRE ANDERSON,

Plaintiff,

-against-

LOUIS A. MOLINA, in his official capacity, SARENA
TOWNSEND, individually and professionally, RUBEN
BENITEZ, individually and professionally, DEION
ISLAR, individually and professionally, CHRISTOPHER
DIXON, individually and professionally, and the CITY OF
NEW YORK,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21-cv-03569 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/26/22

## MEMORANDUM OPINION

Appearances:

> Amy L. Bellantoni
> THE BELLANTONI LAW FIRM
>
> *Attorneys for Plaintiff*
>
> Sylvia O. Hinds-Radix
> CORPORATION COUNSEL OF THE CITY OF NEW YORK
> Kami Z. Barker
> ASSISTANT CORPORATION COUNSEL
>
> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

Before the Court is defendants' motion to dismiss plaintiff Andre Anderson's

Amended Complaint for damages and injunctive relief for alleged violations of his Second, Fourth,

and Fourteenth Amendment rights.  This is the third time the Court has considered a motion to

2

dismiss a complaint by Mr. Anderson pursuant to Rule 12(b)(6).  The Court dismissed plaintiff's first complaint in its entirety on September 14, 2021 [Dkt 18] after he failed oppose to defendants' original motion.  The Court eventually granted him an extension and permitted him to respond and, on November 17, 2021 [Dkt 28], granted defendants' motion and dismissed the complaint in its entirety.   The Court granted leave to amend on August 17, 2022 [Dkt 44], and the defendants' moved to dismiss the Amended Complaint [Dkt 53] on September 1, 2022.

Mr. Anderson's account of the material facts leading to his suspension is largely unchanged.  As recounted in the complaint, Mr. Anderson, a corrections officer then employed by the New York City Department of Correction ("DOC"), was driving home.  Before he got there, he was rear-ended by another motorist who fled the accident scene after plaintiff insisted that they exchange insurance information.  Mr. Anderson then pursued the occupants of the departing vehicle, first by car and then on foot, eventually "dr[awing] his registered personal firearm, [mis]identif[ying] himself as a police officer, and order[ing] [a] passenger to get to the floor."[1]

DOC suspended Anderson from duty that same day, thus triggering a "required surrender" of certain personal firearms "under [DOC's suspension] policies."[2]  Plaintiff "did not object to the initial seizure" of his registered on-duty firearm, a personally owned Glock 19, at his residence.[3]  However, he alleges that DOC exceeded the scope of his consent and improperly seized two of his other weapons: a Sig Sauer P365 ("P365") handgun and a Smith & Wesson M&P 15

---

[1]  Amended Complaint [Dkt. 45] (hereinafter "Am. Compl.") ¶ 43.

[2]  Id. ¶ 62(2).  Plaintiff's Amended Complaint contains two paragraphs numbered "62."

[3]  Id. ¶ 62(1).

3

("M&P 15").

The Amended Complaint's principal revisions are to add a Second Amendment-based Section 1983 claim, name Louis A. Molina as a defendant,[4] summarize and interpret various DOC regulations and directives, assert "failure to train" *Monell* liability, and to request an order "[e]njoining and striking [sic] as unconstitutional the DOC directives challenged herein."[5]


*Fourth Amendment Claims*

Plaintiff appears to have made the erroneous assumption that his original complaint was dismissed on the theory that *O'Connor v. Ortega*[6] extends to government employer searches of a government employee's home. The Court's November 17, 2021 Memorandum Opinion (Dkt. 28), however, said nothing whatever about any such searches. Plaintiff has not alleged any search of his home – lawful or unlawful – nor even that defendants' physical presence there was unjustified.

*O'Connor* is not directly relevant here. Indeed, it is relevant only to the extent that it guides the Court's analysis as to plaintiff's expectations with respect to the P365 and M&P 15 as compared to those of private citizen, on account of job-related responsibilities. In that context,

---

[4] Plaintiff has sued defendant Molina in his official capacity only. Absent a waiver, sovereign immunity "bars the award of monetary damages against state officials in their official capacities." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022); *see Lewis v. Clarke*, 137 S. Ct. 1285, 1290-91 (2017). In any event, as discussed further below, plaintiff has not pled adequately any claim for injunctive relief against defendant Molina.

[5] For the purposes of this motion, the Court accepts as true plaintiff's characterization of the M&P 15 firearm as a "rifle."

[6] 480 U.S. 709 (1987).

4

*O'Connor* instructs that "operational realities" of particular public employment bear on the reasonableness of government employer *seizures* of certain job-related property.[7]

It is well-settled that the Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'"[8]  A "search" occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed," whereas a "seizure" of property denotes "some meaningful interference with an individual's possessory interests in that property."[9]  Even so, this Court does not rely entirely on *O'Connor* in dismissing plaintiff's Fourth Amendment claims.  As noted in this Court's previous ruling, *O'Connor* only "adds weight" to the inevitable conclusion that there was no Fourth Amendment violation here.

Here, it is undisputed that defendants seized plaintiff's firearms after he admittedly chased down and detained a civilian at gunpoint after an off-duty car accident.  In light of Mr. Anderson's job-related responsibilities and the nature of the misconduct to be investigated, the alleged seizures patently were reasonable at their inception.[10]

Mr. Anderson's Fourth Amendment claims must be dismissed also because plaintiff has conceded that defendants were entitled to seize at least some job-related personal property pursuant to valid DOC regulations while lawfully present at his home.[11]  Accepting all of plaintiffs

---

[7]     *Id.* at 709.

[8]     *See, e.g., Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 63 (1992).

[9]     *Id.*

[10]     *See Cerrone v. Brown*, 246 F.3d 194, 200 (2d Cir. 2001).

[11]     Am. Compl. ¶ 62(1).

allegations as true and viewing them in the light most favorable to him, it was objectively reasonable for defendants to believe that their actions were lawful – if not required – once Mr. Anderson surrendered the first handgun without objection.[12]  Plaintiff's suggestion that qualified immunity does not appear on the face of the complaint because the defendants failed to comply with their own policy smuggles in the assumption that the Court must accept Mr. Anderson's interpretations of what he believes to be the relevant DOC regulations as law.  This obviously is not the case.  There are numerous DOC regulations – of which the Court has properly taken judicial notice – that concern suspensions and firearm privileges, and the Court already has canvassed key ambiguities across a number of them.[13]

*Fourteenth Amendment Claims*

The Court dismissed all of the Fourteenth Amendment claims in Mr. Anderson's first complaint because (1) previously that pleading did not allege that adequate post-deprivation remedies were unavailable, and (2) even if defendants had acted pursuant to established state procedure, DOC's interest in acting promptly to protect the safety of its institutions, inmate populations, and the general public during initial disciplinary fact-finding outweighs correction officers' private interests in maintaining access to personal handguns at the outset of a misconduct investigation as well as the risk of erroneous deprivations, which has been mitigated by DOC's internal post-suspension remedies.

The thrust of plaintiff's allegations in the amended complaint is unchanged.  It adds

---

[12]   Dkt. 28, at 11.

[13]   *Id.* at 9-11.

summaries and interpretations of DOC regulations that plaintiff believes are relevant, various purported statements of law,[14] and a conclusory allegation that "Defendant [*sic*] failed to provide Plaintiff with any post-deprivation hearing and/or procedure for the return of his Sig Sauer handgun and M&P Rifle."[15]

None of the defects for which the Court previously dismissed all of plaintiff's Fourteenth Amendment claims has been cured. Plaintiff's failure to allege plausibly any Fourteenth Amendment violation does not turn on the fact that he has availed himself of Article 78 review. As the Court noted in its previous ruling:

> "At the Command level, DOC's firearm regulations allow employees to seek a postdeprivation remedy by filing a Form 4511-F 'Request for Restoration of Firearm Privileges,' which requires the commanding officer to issue a determination within thirty business days. Employees may also obtain higher-level review along a variety of avenues, including through a "Firearms Review Board," by the Assistant Commissioner of Trials and Litigation, and/or by the Deputy Commissioner for Investigations. The complaint does not allege that defendants improperly withheld those remedies or that they were otherwise unavailable to him."

The Amended Complaint leaves this ground entirely unaddressed. And, in any case, his failure to allege that he availed himself of the command-level processes related to firearm confiscation would be fatal to his claim that those procedures were so inadequate as to support a Fourteenth Amendment Section 1983 claim had he so asserted.[16]

---

[14]   *E.g.*, Am. Compl. ¶ 82 ("A state Article 78 proceeding is an insufficient means for seeking redress for Plaintiff's constitutional violations.").

[15]   *Id.* ¶ 81.

[16]   *See, e.g., Arredondo v. Cnty. of Nassau*, No. 11-cv-710 (JFB) (GRB), 2012 WL 910077, at *9 n.12 (E.D.N.Y. Mar. 16, 2012) ("There is no exhaustion requirement to bring a Section 1983 proceeding. However, because one must show that the state procedural remedies are inadequate in order to bring a Section 1983 due process claim, the availability and non-use of such procedures would bar a Section 1983 claim. Thus, the argument is better

*Second Amendment Claim*

Plaintiff's amended complaint adds a Second Amendment Section 1983 claim and a request for injunctive relief declaring unconstitutional certain DOC firearm regulations.  With respect to constitutionality, the Court already has canvassed at length the government's compelling public safety interests in controlling a correction officer's access to firearms during a misconduct investigation where the officer's fitness to use force may be in question.  In any event, the Court need not scrutinize the substance of the relevant DOC regulations, as plaintiff has not alleged plausibly that he has availed himself of any of the command-level procedures by which his right to purchase or handle firearms may be restored, to say nothing of his pending Article 78 proceeding.

Plaintiff's allegation here is that DOC "bann[ed] his possession, ownership, handling, purchase, and receipt of firearms" pending resolution of gun-related misconduct charges.  This, in substance, is an objection to the adequacy of the disciplinary and redress procedures that accompany his continued employment at DOC, employment to which he is not constitutionally entitled.[17]  As previously discussed, he has not plausibly alleged that DOC's internal processes by which he might seek relief are inadequate or unavailable to him.  DOC's disciplinary processes and the accompanying procedures for restoring officers' privileges pending their resolution are – to the extent they have any constitutional dimension – questions of due process.[18]  The Amended

_____

characterized as a failure to use available, post-deprivation remedies. *See Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988).").

[17]    Am. Compl. ¶ 129.

[18]    The Court notes further that plaintiff's contention that DOC Directive 4511R-B III is "overbroad" ignores the fact that the regulation differentiates the command-level procedures

Complaint does not allege plausibly any Second Amendment violation.

*Monell*

Although plaintiff has added a "failure to train" theory of *Monell* liability and deleted the allegation that defendants Islar and Dixon acted only "independently" when seizing Mr. Anderson's firearms,[19] it remains true that there can be no liability for failure to train or supervise where there is no underlying constitutional violation. *Monell* "does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."[20]

\*\*\*

---

[19] for restoring firearm privileges in "gun-related" and non-gun-related suspensions. *See, e.g.,* DOC Directive 4511R-B § III.G.7 ("A request to restore firearm privileges that are appropriate for command level determination should be granted by the Commanding Officer unless the circumstances leading to the original confiscation/surrender are gun-related or the member's conduct, behavior, or performance is such that granting the request may result in a serious concern for safety.").

Plaintiff now alleges that defendants Islar and Dixon acted "independently and at the direction of Townsend and/or Benitez" when ordering him to surrender all of his handguns. Am. Compl. ¶ 61(1). The Amended Complaint contains two paragraphs numbered "61."

[20] *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss plaintiff's Amended Complaint is GRANTED in all respects.

SO ORDERED.

Dated:        October 26, 2022

_____

Lewis A. Kaplan
United States District Judge